IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**NORMA FRANCO-SANTOS, et al.**

   Plaintiffs,

     v.                                                                            Civil No. 09-1989 (GAG)

**GOLDSTAR TRANSPORT, INC., et al.**

   Defendants.

**OPINION AND ORDER**

Plaintiffs in this case, brought suit against Goldstar Transport, Inc. ("Goldstar") and Puerto Rico Warehousing Management Corp. ("PRWM") (collectively "Defendants"), following co-plaintiff Norma Franco-Santos' ("Franco") dismissal from employment. Plaintiffs bring suit for alleged acts of age discrimination taken against co-plaintiff Franco pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et. seq.*, and for Defendants' alleged failure to comply with the requirements of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161. Plaintiffs also invoke the supplemental jurisdiction of the court to adjudicate their claims under Law No. 80 of May 30, 1976, as amended ("Law 80"), P.R. Laws Ann., tit. 29, § 185a *et. seq.*; and Law No. 100 of June 30, 1959, as amended ("Law 100"), P.R. Laws Ann. tit. 29, § 146 *et. seq*.

Presently before the court is Defendants' motion for summary judgment and supporting memorandum (Docket Nos. 23 & 24). Plaintiffs timely opposed this motion (Docket No. 38). After reviewing these submissions and the pertinent law, the court **GRANTS** Defendants' motion for summary judgment and **DISMISSES** Plaintiffs' claims.

**I.      Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**Civil No. 09-1989 (GAG)**                                               2

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Furthermore, when submitting and opposing a motion for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a separate, short and concise statement of facts, set forth in numbered paragraphs, and supported by record citations as required in Local Rule 56(e). See D.P.R. Civ. R. 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

**Civil No. 09-1989 (GAG)**                                                            3

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule.

D.P.R. Civ. R. 56(c). Local Rule 56(e) provides that "a court may disregard any statement of fact not supported by a specific record citation to record material properly considered on summary judgment." D.P.R. Civ. R. 56(e).

**II.     Relevant Factual & Procedural Background**

Goldstar is a corporation founded in 1990. It is dedicated to shipping services to freight forwarders and exportation of aerial freight. PRWM was created in 2001 and provides services in conjunction with the services provided by Goldstar. The two companies are integrated with a third company, J & M Associates, all of which are owned by Jennifer Maldonado.

According to Goldstar's payroll check registers, which lists employees according to fifteen-day pay periods, Goldstar employed at most ten[1] individuals for more than half of the pay periods during the year prior to September 9, 2008 (October 2007 - September 2008). Goldstar's payroll check registers lists six other employees who were employed for half or less of the pay periods of the year preceding September 9, 2008. When combining both the employee registers of Goldstar and PRWM, the two corporations had at most $19.4^2$ employees who worked at least fifty percent of the time during the preceding year.

---

[1] Defendants list nine full time employees in ¶ 48 of their statement of uncontested facts (Docket No. 25). In their opposing statement of facts (Docket No. 34-1), Plaintiffs contend that there was at least one more full time employee in addition to the nine listed by Defendant. The court will assume, for purposes of ruling on Defendants' motion for summary judgment, that Plaintiffs' calculations are correct.

[2] Defendants argue that the two companies had a combined number of only fourteen full-time employees during the relevant time period. Plaintiffs contest this assertion and contend that 19.4 employees worked at least fifty percent of the time during this period. The court will assume, for purposes of ruling on Defendants' motion for summary judgment, that Plaintiffs' calculations are correct.

**Civil No. 09-1989 (GAG)**                                              4

Franco began her employment with Defendants in September 1990. It is a matter of contention among the parties as to whether Franco was employed by Goldstar or PRWM, or by both throughout her employment. During her tenure, Franco was always listed under Goldstar's payroll, however Plaintiffs contest that this fact is determinative of her status as an employee. On April 20, 2008, June 15, 2008, and September 14, 2008, when filing claims for unemployment benefits before the Puerto Rico Department of Labor, Franco identified Goldstar as her employer.

Franco was assigned to a customer service position at Goldstar. During her tenure with Goldstar, Franco was supervised by Jennifer Maldonado, among others. Franco contends, that throughout her employment Maldonado constantly told her "that she [(Franco)] was tired" and "next to leave the company" and "to insult and blame her for everything that happened." On numerous occasions during her employment, Franco was given warnings, memos, and suspensions related to performance failures in her work as a customer service representative.[3] On April 22, 2008 Franco was suspended for three days, due to an alleged failure to comply with her duties. The suspension memo stated in pertinent part:

> On countless number of occasions you have been verbally admonished concerning your poor performance and carelessness with assigned tasks. You have also been given various Memos explaining to you and warning you in writing as to how the poor performance of your duties negatively affects the business's operations. In spite of all the preceding warnings we have observed how you have continued with your attitude, poor performance, and lack of attention to the details which in the end affects the proper functioning of our operations.
>
> We want to make it thoroughly clear that you find yourself in stage #3 of the disciplinary actions of the business according to page #5 of the Employee Manual,

---

[3] Plaintiffs move to strike a number of Defendants' uncontested facts (See Docket No. 40), arguing that the incident reports related to Franco's performance are inadmissible on grounds of relevance and authenticity. The court has considered such objections and denies Plaintiffs' request to strike this evidence. The reports are clearly relevant as they are past evidence of Franco's inability to meet her employer's legitimate expectations. Furthermore, the authenticity of the majority of the incident reports is established through Franco's deposition testimony. See Fed R. Evid. 901(b)(1) (permitting authenticity of a document through testimony of a witness). The report of October 3, 2007 (Docket No. 25-7 at 7) was not identified during Franco's deposition testimony and therefore was not considered by the court when ruling on Defendants' motion for summary judgment.

**Civil No. 09-1989 (GAG)**                     5

> in the section relating to General Conduct Guidelines (see attached copy of manual). We hope to see a positive change in your attitude and in the performance of your duties for everyone's well-being and to achieve an efficient operation within the Business. In the event that this positive change which we anticipate does not take place, we will find ourselves obligated to do without your services for the proper functioning of the Business's operations.  (See Docket No. 25-7 at 7.)

On September 9, 2008, Franco was dismissed from her employment because of an incident related to shipment HAWB 163557 and the repeated warnings regarding her performance.

**III.     Discussion**

   **A.     ADEA Claim**

   The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623 (a)(1).  If a plaintiff does not have any direct evidence of age discrimination they must raise an inference of discrimination by proceeding under the McDonnell Douglas burden-shifting framework. See Rivera-Aponte v. Restaurant Metropol # 3, Inc., 338 F.3d 9, 11 (1st Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).  To establish a *prima facie* case under the ADEA framework, a plaintiff must prove four elements: (1) that she was over 40 years old; (2) that she has met her employer's legitimate job expectations; (3) that the employer took adverse action against her; and (4) that the employer did not treat age neutrally or that younger persons were retained in the same position.  Herbert v. Mohawk Robber Co., 872 F.2d 1104, 1111 (1st Cir. 1989).

   Once a plaintiff makes the *prima facie* showing, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decisions. See Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009).  The plaintiff must then rebut the given explanation by providing evidence that the reason was merely pretext for illegal discrimination.  Id. The Supreme Court has recently declared that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Services, Inc., --- U.S. ---, 129 S.Ct. 2343, 2352 (2009).  The Court declared in Gross that this "but for" standard is a much

**Civil No. 09-1989 (GAG)**  6

higher standard than that which has been applied in Title VII cases.[4] See id. at 2351.

As Plaintiffs have not offered direct evidence of discrimination to support their unlawful discharge claim, they must proceed under the burden-shifting framework. However, Plaintiffs are unable to establish a *prima facie* case of age discrimination, as they have failed to satisfy the second element of their claim – that Franco had met her employer's legitimate job expectations. Defendants submit certified translations of Franco's personnel record, which contains approximately twenty six notices that document her inability to sufficiently perform her duties. (See Docket No. 25-7.) These records further demonstrate that Franco was warned numerous times that her failure to remedy these deficiencies could ultimately result in her dismissal. (See id. at 4, 8, 38, 47, 48.) Such evidence is more than sufficient to show an employee's failure to meet the legitimate job expectations of his/her employer. See Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (affirming dismissal of ADEA claim when "undisputed evidence establishe[d] that [plaintiff's] job performance was not meeting employer's legitimate expectations at the time of termination"); Matias-Cardona v. Verizon Wireless Puerto Rico, Inc., 610 F. Supp. 2d 157, 168 (2009) (finding plaintiff failed to satisfy second element of ADEA claim because defendants submitted evidence demonstrating that plaintiff was deficient in many areas of his work).

ADEA plaintiffs regularly demonstrate this element of their *prima facie* case by proffering evidence of positive reviews, pay raises and promotions. See e.g. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996) (history of promotions and pay raises "supports an inference that an employee's job performance was adequate to meet an employer's needs"); Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995) (finding that plaintiff satisfied evidentiary "hurdle with his proffer of substantial wage increases and ten years of positive performance reviews"). However, Plaintiffs offer no such evidence. Instead, Plaintiffs attempt to support their

---

[4] Title VII protection has recently been amended by explicitly authorizing discrimination claims in which an improper consideration was a "motivating factor" in an adverse employment decision. See 42 U.S.C § 200e-2(m).

**Civil No. 09-1989 (GAG)**                              7

*prima facie* case of discrimination through Franco's sworn statement, in which she asserts that the duties she failed to perform were either not part of her job description, or were not exclusively her responsibility. (See Docket No. 45-1 at ¶ 2, 4.) However, this evidence is insufficient to rebut Defendants' assertions of Franco's deficiencies. For purposes of the ADEA, a plaintiff must meet the legitimate job expectations of her *employer*. See Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 49 (1st Cir. 2008) (quoting Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 338 (7th Cir. 1991) (recognizing that in the context of a *prima facie* case of age discrimination under the ADEA "[a]n employee's perception of himself is not relevant. Rather, it is the perception of the decision maker which is relevant.") Therefore, Franco's subjective belief that she was meeting her employer's expectations is insufficient to satisfy her burden.

As Plaintiffs are unable to present sufficient evidence to establish a *prima facie* case of discrimination under the ADEA, the court **GRANTS** Defendants' motion for summary judgment and **DISMISSES** this claim.

**B.     COBRA Claim**

Plaintiffs allege that following Franco's termination from employment, Defendants did not provide her with statutorily mandated notices of her rights under COBRA. COBRA mandates that an employer give former employees the opportunity to continue coverage under the employer's group health plan if a qualifying event occurs. See 29 U. S. C. § 1161(a) ("Section 1161"). Termination of employment, other than by reason of the employee's gross misconduct, is a qualifying event, and requires that the employer notify the administrator of the group health plan within thirty days of the termination. See 29 U. S. C. §1163 (2). However, employers that meet the "small-employer exception" are not statutorily required to offer this service. The "small-employer exception" states that this mandate "shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C §1161(b).

In Cruz Jiminez v. Mueblerias Delgado, Inc., 196 F. Supp. 2d 125, 128-29 (D.P.R. 2002), this court applied the "small-employer exception" as it was interpreted in Martinez v. Dodge Printing

**Civil No. 09-1989 (GAG)**                               8

Centers, Inc., 123 B.R. 77 (Bankr. D. Colo. 1991). In Martinez, the Colorado District Court noted that there is "little guidance from Congress, the administrative agencies or the courts on precisely how to determine whether a business 'normally employed fewer than 20 employees on a typical business day' in order to qualify for the small employer exception." Id. at 79. With little guidance, the Martinez court decided to apply the proposed regulations issued by the U.S. Treasury Department in 1987. Id. at 80. The regulations provided that "[a]n employer is considered as having normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its working days that year." 52 Fed. Reg. 22716, 22721 (1987) (to be codified at 26 C.F.R. pt. 1) (proposed June 15, 1987).

Defendants contend that, even if considered a "single employer" the combined work forces of Goldstar and PRWM are small enough to exempt the corporations from having to comply with the requirements of Section 1161. (See Docket No. 24 at 8.) In support of this claim, Defendants provide payroll registers of their employees during the relevant time period. (See Docket Nos. 25-12 & 25-13.) In interpreting this documentation, Defendants contend that during the relevant period they employed, at most, fourteen qualifying employees. (See Docket No. 25 ¶ 56.) In their opposing statement of facts, Plaintiffs argue that during the relevant period both companies had a combined 19.4 employees who worked at least fifty percent of the time. (See Docket No. 34-1 at ¶ 56.) While Plaintiffs cite this statistic in their opposing facts, they make no argument whatsoever opposing Defendants' motion for summary judgment on their COBRA claim. Regardless, even if Defendants were considered a "single employer," for purposes of calculating the number of employees, this designation would still not force Defendants to comply with Section 1161. Plaintiff's calculation of 19.4 employees is still lower than the maximum number of employees that can meet the exemption. Therefore, under either parties' interpretation, Defendants' are not legally mandated to comply with Section 1161 of COBRA. Accordingly, the court **GRANTS** Defendants' motion for summary judgment as to this claim and **DISMISSES** the same.

**Civil No. 09-1989 (GAG)** 9

### C. Local Law Claims

#### 1. Law 100

The First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 (1st Cir. 2007). "As applied to age discrimination, it differs from the ADEA only with respect to how the burden-shifting framework operates." Id. As discussed under the above ADEA analysis, the Plaintiffs fail to satisfy their burden to demonstrate that Franco met her employer's legitimate job expectations. Therefore, the court holds that Plaintiffs are unable to meet the evidentiary burden to sustain her claim under Law 100, and **DISMISSES** this claim.

#### 2. Law 80

Plaintiffs also brings forth a Law 80 claim, alleging that she was discharged without just cause. "An employee's initial burden under Law 80 is to allege unjustified dismissal and prove actual dismissal. If the employee meets this burden, the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Hoyos v. Telecorp Communications, Inc., 405 F. Supp. 2d 199, 205-6 (D.P.R. 2005) (internal quotations omitted). Pursuant to the statute, just cause for termination is defined in pertinent part, as:

> (a) That the worker indulges in a pattern of improper or disorderly conduct.
> (b) The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.
> (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

P.R. Laws Ann., tit. 29, § 185b *et. seq*. Pursuant to the prior analysis, the court holds that Defendants have provided just cause, under the statute, for Franco's dismissal. Furthermore, Plaintiff is unable to produce any sufficiently probative evidence refuting Defendants' proffered reasons for her dismissal. Accordingly, the court **GRANTS** Defendants' motion for summary judgment as to the Law 80 claim, and **DISMISSES** this claim.

### IV. Conclusion

Based on the foregoing, the court hereby **GRANTS** Defendants' motion for summary

**Civil No. 09-1989 (GAG)**                     10

judgment and **DISMISSES** all claims before this court.

**SO ORDERED**

In San Juan, Puerto Rico this 17th day of February, 2011.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge